## WILLIAMS & YEATMAN vs WHITLOCK.

Our recent statute regulating practice in courts of justice, requires suits to be brought in the names of the parties in interest; and it is for the court to say, upon a given state of facts, whether a plaintiff is the real party in interest.

A deposited funds at a banking house, in the name of B, giving B the pass book and blank checks, with permission to use them. B, when applied to by ostensible creditors of A, disclaimed all interest in the funds, and gave a check for them. Held, that B was not a party in interest, and could not maintain an action for the funds.

Williams & Yeatman vs. Whitlock.

## APPEAL from St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

Margaret A. Whitlock filed a petition, stating that on the 13th day of August, she drew a check on E. W. Clark & Bros. for $1800 in favor of Willis L. Williams, and delivered the same to him, but he gave no consideration for it.

That said Willis L. Williams and James E. Yeatman presented said check for payment and the $1800 were received thereon, for which amount she demanded payment, and claimed as damages for the wrongful and vexatious receipt, and this application of her money, the sum of $500.

In answer, Williams states, that he with others, went to the house of Mrs. Whitlock in search of the property and effects of Nathaniel Childs, Jr., who was suspected of having smuggled (or stolen) money belonging to the bank of the State of Missouri. That when Mrs. Whitlock learned the object of his visit, she said that sometime during the last spring, Mr. Childs deposited $2800 to her credit at E. W. Clark & Bros., $1800 of which was still on deposite, and she therefore ("voluntarily") drew a check for said money of Mr. Childs and gave it to him to be delivered to one of the bank directors, which was accordingly done. That he afterwards received the money on it and delivered the same to the officers of the bank.

Yeatman states in his answer, that he did not receive or present said check, nor did he receive any money on it—that the check was given to Williams by Mrs. W., the plaintiff, who stated, emphatically, that it was for money belonging to Mr. Childs.

On the trial, Mrs. W. proved by her friend, agent and attorney that she demanded a return of the check in writing, and demanded also the proceeds. She produced the letters of Williams & Yeatmen in reply to said demand. The letter of Williams proved that the check was voluntarily given to him by Mrs. W., for the purpose stated in his answer, and that it was disposed of in her presence, by the delivery of the same to a director of the bank. That she said it was drawn for money belonging to Mr. Childs. She also produced a pass-book in which the $2000 was entered to her credit, and proved by R. S. Whitney that the entry was in the hand-writing of John C. Davy, clerk of E. W. Clark & Bros. (The introduction of pass-book was objected to, but objection was overruled.) Whitney stated that the money had been paid on the check to Williams. He also said that after the entry was made in the pass-book, Davy told him who made the deposit. Whitney was asked on cross-examination "who it was that Davy said made the deposit." The court could not permit him to answer. He was then asked whether Davy said "it was Nathaniel Childs, Jr." Witness was not permitted to answer.

Williams and Yeatman proved that the bank of the State of Missouri had lost about $120,000. That Nathaniel Childs, Jr., was strongly suspected of having embezzled or stolen the money of the bank—that they W. and Y., had been authorized by the bank to search for any property, money or affects of said Childs—that in searching for the same, they went to the house of Mrs. W., who denied, at first, having in her possession any thing belonging to said Childs. She afterwards said that she had spent the previous night at the house of Mr. Childs—that on leaving him that morning she asked if she could serve him in any way, to which he said yes, and handed her some papers to keep for him, "saying that he expected his house to be searched." They introduced evidence proving that she said that Mr. Childs had deposited $2000 to her credit, in the spring, with E. W. Clark & Bros. and had handed to her the pass-book and checks. They also proved that Mrs. Whitlock gave up the papers, given her by Childs, among others, the check for $1800 as the property of Mr. C. declaring that she was disposed to give up every thing belonging to him. They also proved that the money

received on said check was put into the hands of one of the bank directors. That said money was looked upon as belonging to Mr. C., and considered as part of the money lost by the bank.

The court then gave the following instruction asked by plaintiff below:

"If the jury find from the evidence, that on the 10th day of May, the sum of $2000 was deposited with E. W. Clark & Bros. to the credit of plaintiff, and in her name, and subject only to her order and, that defendant, Williams, in conjunction with defendant Yeatman and others on the 13th of August, '49, procured the plaintiff's check, given in evidence by her for $1800 of said deposit in his own favor, without any consideration, then the legal title to said check was in plaintiff, and if before said check was asked, the plaintiff demanded the same by her authorized agent from said Williams, and that afterwards said defendant knowing of said demand procured the money on said check, and afterwards before the commencement of this suit, the said money was also demanded as aforesaid of said defendants, then the plaintiff, is entitled to recover."

The defendants then asked ten instructions, whereof the following were given, to-wit:

5. If the jury do not find from the evidence that the plaintiff is the real party in interest, that is, that she was the real owner of the money at the time it was obtained, and continued so up to the commencement of this suit, they will find for defendants.

9. The jury are instructed that money embezzled or stolen by one person from another, and the property obtained by it, while owned by the person so embezzling or stealing, is the money and property of the one from whom it was thus taken, and may lawfully be procured and taken by the owner thereof.

1. Refused. The court is requested to instruct the jury that if they believe from the evidence that the money on deposit was with E. W. Clark & Bros., and which was paid on the check of Margaret A. Whitlock, was in fact the money of N. Childs, Jr., or the money of any other person than the plaintiff, they will find for the defendants.

2. Refused. If the jury believe from the evidence that the plaintiff voluntarily drew the check introduced in evidence and mentioned in the plaintiff's petition and gave the same to defendant Williams, as agent for the bank of the State of Mo. for the purpose of obtaining the money the said check called for, and that the said Williams did obtain the money and paid it over to the said bank, they will find for defendants.

3. Refused. If the jury believe from the evidence that the defendants went to the house where the plaintiff lived, as agents of the bank of Missouri to obtain any money, goods or chattels or effects of N. Childs, Jr., that might be in the possesion of the plaintiff and that the plaintiff surrendered the money or check in question, to obtain said money, as the property of said Childs, and that said defendants gave the same to the bank, they will find for defendants.

4. Refused. If the jury believe from the evidence that the defendants asked the plaintiff for any money, goods or effects in her possession belonging to Childs, and that she delivered up the money in controversy in this suit as the money of said Childs and they took the same in good faith, for the benefit of the bank, believing it to be a part of any embezzlement by said Childs of the money or funds of said bank or the proceeds of such embezzlement, and delivered the same over to the bank, they will find for defendants.

6. Refused. If the jury believe from the evidence that the defendants are not really interested in the money sued for, and that the same was obtained for the use and benefit of the bank of the State of Missouri, and has been so appropriated and that no benefit has or will accrue to defendants on account of said money, and that it was known to plaintiff at the time the same was obtained, that it was for the bank which was in pursuit of the money alleged to have been embezzled by Childs, they will find for defendants.

7. Refused. The jury are instructed that the answers of defendants are to be taken as true, unless the plaintiff has found them false by the testimony of two witnesses, or such facts and circumstances as are equal to the testimony of two witnesses.

8. Refused. The court is requested to instruct the jury that the entry in the pass-book made

Williams & Yeatman vs. Whitlock.

by a clerk of E. W. Clark & Bros., and offered in evidence on the trial of this cause is not evidence that the same was the money of plaintiff in this suit as against any body but E. W. Clark & Bros.

To which refusal of instructions by the court, defendants excepted, and excepted also to the opinion of the court by which hearsay evidence was introduced by which defendants were prevented from cross-examining witness Whitney.

The cause was submitted to the jury—they announced to the court that they could not agree; the court refused to discharge them, and they brought in a verdict for the plaintiff.

Whereupon defendants moved for a new trial for various reasons filed, which motion was overruled by the court, to which decision defendants excepted and bring their appeal here.

BARRET, for appellants.

I. The court erred in giving the instructions asked by plaintiff below.

1st. Because, although the check was in favor of Williams, without consideration, for money deposited to credit of plaintiff, for which the demands were made in manner and form, &c , still, the money was put into her hands for safe keeping merely, and she was but the servant of another, and had not sufficient property in said money to maintain this action. Dellensbach vs. J., 7 Cow. R., 294; 1 Ch. Plead., 152; Falkner vs. Brown, 13 Jr. R., 63; 9 Mass. R., 104; Waterman vs. Robinson, 5 Mass. Rep., 265; Whitier vs. Smith, 11 Mas. Rep., 211; Commonwealth vs. Morse, 14 Mass. R., 217. 2nd. Plaintiff must show a complete property in the money received and misapplied by defendants, and also the possession of, or right to possess it. 3 S. and R. 512–13; 1 Tenn. R., 561; 1 Yeats 19; Gordon vs. Harper, 7 Tenn. R., 9. 3rd. Said instruction was calculated to mislead the jury. They might suppose that the legal title to the check would entitle the plaintiff to the money belonging to another. 4th. Because said instruction is inconsistent with the other instructions given by the court. The jury could easily have found for plaintiff under one instruction, she having the legal title to the check, &c., while they were compelled by another instruction to find for defendants, the plaintiff not being the real owner of the money, &c.

II. The court erred in refusing the instruction asked for on the part of defendants for the following reasons:

1st. The conversion of a check into the money of Mr. Childs did not damage the plaintiff.

2d The voluntary delivery of a check to defendants for a particular purpose, and the application of it to that purpose, must be a bar to plaintiff's recovery in this action.

3. The plaintiff surrendered the money or check as the property of Mr. C. This is good evidence that she is not the real owner thereof and that it belonged to a third party: 11 John. 52; 1 Wend, 466.

4. The check was surrendered to agents of the bank by plaintiff, and the delivery of the same by those agents to their principal occasioned no damage to the plaintiff.

5. Defendants were in the lawful pursuit of that which they had a right to receive when delivered, and the same being taken by defendants in good faith for the benefit of the bank, supposing it a part of the money embezzled, or the proceeds thereof, they were not wrong doers.

6. There was no wrongful taking, no illegal using or misusing, no wrongful detention, no wrongful commission: 2 J. J. Marsh. 84: Stark 1595, 1496, 1492; 9 Johns. 360; 8 Ib, 445; Strange, 813, 576.

7. Answers duly sworn to are to be taken as true unless contradicted by two witnesses, or by such facts and circumstances as are equal to the testimony of two witness: Gusby eq. ev., 4; 2 Atk. 19; 1 Vez, 66, 1 Vez. 97, 125; 3 Vez. 179.

8. The answer that plaintiff was not the real owner of the money sued for, and that she herself declared it to be the money of another, they do therefore (under an instruction given) constitute a legal defence if true.

Williams & Yeatman vs. Whitlock.

9. An entry in a pass-book is an acknowledgment of indebtedness on the part of the banker, because it is his admission against himself, but the entry is no proof of ownership in a depositor, except as against the banker, because a person may deposit and have entered to his own credit the money of another. The banker cannot know whether the money deposited by A belongs to him or B—his entry in A's favor could not be evidence of that fact, but he does know that the money is not his own and his own entry is good evidence of that fact.

III. The pass-book was merely hearsay evidence—it contained the written statement of a clerk, not under oath, who would have been a competent witness and ought to have been brought into court on the trial. The court erred, therefore, in permitting the pass-book to be introduced by plaintiff.

IV. The court erred in refusing to let the defendant's counsel cross-examine witness Whitney in regard to the hearsay evidence he had given at plaintiffs' instance. If plaintiff was entitled to what Davy said with a pen, surely defendants ought not to be deprived of the benefit of any thing which he might have said with his tongue.

V. The court erred in overruling the motion of defendants for a new trial, because the verdict was against the law, against the law and the evidence, and against the weight of evidence.

## Polk, for respondent.

I. The court below rightly admitted the pass-book or blank book offered in evidence by plaintiff. It was proved to be in the hand writing of J. C. Davy, a clerk of E. W. Clark & Brothers, and that it was his duty to make such entries in such books in the absence of witness Whitney, and that said Whitney was about at the time. The evidence was, therefore, clearly competent. It shows that on the 15th of May, 1849, there was $2000 with the bankers E. W. Clark & Bros., to the credit of the plaintiff, it was therefore relevant and pertinent.

But at all events the appellant can assign no error on the ground that the common pleas ought to have excluded the pass-book, because the bill of exceptions does not show that any objection to the evidence or any specific grounds were made in that court: Fredts vs. Hunter, 8 Mo. R., 131; S. B. Thomas vs. Erskine & Gore, 7 Mo. R. 215. Moreover the bill of exceptions shows that the pass-book was already in evidence before it was objected to.

II. The court below did right not to allow the witness Whitney to state what either J. C. Davy or E. W. Clark & Brothers had told him, as to who made the deposit of $200 00. Both Davy & Clark were competent witnesses and their testimony might have been procured. The evidence asked, therefore, was hearsay, and of course, ought to have been excluded.

The question was not confined to any declaration of Davy, at the time the deposit was made.

III. The common pleas court committed no error in giving the instructions prayed for by plaintiff.

1. The evidence justified the court in making the hypothetical statement of facts contained in the instruction.

2. If the evidence established the case stated in the first branch of the instruction, that is, the fact being as therein stated, it was unquestionably true that the legal title to the check was in plaintiff, and it could not be error to tell the jury so.

The money on deposit was credited by E. W. Clark & Brothers to her in the pass-book, delivered by them into her possession. It could be drawn by her and no one else. Her check could pass title to it. It had already passed title to a part of it $200. Nothing else could. Childs could not have drawn it, neither by check nor in any other manner, and when defendant pretended to procure it as his money, they did not attempt or think of reaching it by his check by his plaintiffs, and when they at length succeeded, braving all consequences, in getting possession of the $1800 it was accomplished only by the check of plaintiff. Neither one of your honors on the bench has any more or higher evidence of title to property in the money you may have on deposit in the bank than this plaintiff produced in the trial of

this cause to the $1800 gotten from her by those defendants. The money, therefore, was hers, and of course, the check drawn for it was so.

3. The first clause of the instruction on the facts as it assumes them, asserts that in law the legal title to the check, not the money on deposit, was in plaintiff.

Can it be questioned that the plaintiff's own check, drawn by herself and remaining in her own hands, is her own property? If it be gotten out of her possession without any consideration, is it not equally unquestionable that it remains her property still? Nothing, it seems to me, can be plainer.

4. The instruction proceeds further, and supposes, that the defendants holding the check through plaintiff, before it is cashed, makes demand on them for it, and notwithstanding the demand, they wilfully draw the money for it, and then the plaintiff again makes demand for the money drawn. Now the title to the check still remaining in the plaintiff, as I have above shown, and her property and ownership not diminished, it must follow of necessity that she is the owner of the money drawn upon it.

5. If I deposit $500 with a banker by the name of A. B. so that it can be drawn only on his own check and give him the banker's pass-book showing that the banker is indebted to him to that amount, even though he may never have given me a cent of consideration for the deposit, he will hold it in spite of the challenge of every body but my creditors. Against all the world except my creditors, he is the real and sole owner of the deposit.

Now let it be supposed, for a moment, that the deposit in this case was made by Childs, a supposition not supported by the evidence, yet, this is not a contest between the plaintiff and creditors of Childs. There was nothing to show that Childs had any creditors, much more it did not appear that the defendants were his creditors.

6. If I deposit with a banker $1000 in the name of A. B. and take the bankers pass-book, in his name, with the deposit entered to his credit in it and deliver the book to him, though I may not intend to give him the amount, only to lend it to him, still the ownership of the deposit has passed from me and has become vested in him. I am his creditor to the amount of the $1000, and may recover from him another sum of $1000, but the $1000 deposited to A. B. belongs to him.

7. The object of the first section of article 3, new code of Practice was only intended to make the same persons parties to suits under that act, as must have therefore been made parties to suits in equity. This is evident from the 23d and 25th sections next succeeding. See also Judge Wells' note on this section.

8. In New York under their new code of practice the provisions of which are exactly similar to ours, indeed the same in its very words, on the subject of parties to civil actions, it was decided, that on bonds taken in the name of the people of the State, suit should be brought in the name of the people of the State: Bos. vs. Seaman, 2 C. K. 1; Morrell's practice under their code, p. 10; Charles vs. Watman, 2 Howard Sp. T. R., 122.

9. On the same matter upon which the court below gave the plaintiffs instruction and in connection with it, it gave also the 5th instruction prayed for by defendants, to the effect that "unless the jury should find the plaintiff to be the real party in interest, that is, the real owner of the money at the time it was obtained, and continued so up to the commencement of the suit, they must find for defendants.

Now I hold, that this instruction together with the one given for the plaintiffs give a fair and full explanation of the law as applicable to the subject matter to which these instructions have reference, and also, that the instructions are consistent and stand together.

The 5th instruction is in the very language, almost the very words, of the 3d article of the new code of practice.

IV. In refusing to give the 1st instruction prayed for by defendants, the common pleas court committed no error for which this court ought to reverse the judgment.

1. Because the instruction demands of the court to tell the jury that if Childs, or any person else at any indefinite period of time before the commencement of this suit was the owner of the money deposited, they must find for defendant. It does not confine it down to the

time of *commencing* the suit, but says if the money was at any time the property of Childs or any other person, the plaintiff could not recover. Than this proposition nothing could be more untrue in law. It may have once been his, but at the commencement of the suit it was hers, and will be shown to thousands.

2. But if the instructions meant to assert that if at the commencement of the suit any person besides the plaintiff was really the owner of the money which had been drawn on her check by defendant, then she could not recover, why in that case it only asserts what the court did in fact tell the jury in the 5th of defendant's instructions given by the court.

A writ of error will not lie for refusing to give an instruction, the substance of which had already been given by the court: Maston vs. Fanning, 9 Mo. R., 314.

V. Defendant's second instruction asked the court to tell the jury that if the plaintiff gave the check to defendants voluntarily, that is, I suppose, without compulsion, she thereby parted with her title to it even though the defendants gave her no consideration therefor, whatever.

This instruction must have been prayed upon some supposed but false analogy to what are called in law "voluntary payment."

But in the case of a voluntary payment, the title to the money paid rests in the creditor, because there is a sufficient consideration rendered by him for it—his debt is extinguished. In this case, however, there was no consideration paid by defendants to plaintiff.

VI. The defendant's 3rd and 4th instructions assert substantially the same thing—that if the plaintiff surrendered the check up, as the property of Childs and the defendants received it as such for the bank and delivered it over to the bank, the plaintiff was not entitled to recover.

These instructions were properly refused by the court.

1st. Because the mere surrender and receipt of the check as the property of Childs, could not of itself make the check the property, &c., of C.; could not vest the ownership in Childs, nor divest it out of plaintiff. And especially could it not have such an effect where there was no consideration whatever given by the defendants or by the bank for the check as was the fact in this case.

2nd. Because it is not true in law, that the mere giving the check they had gotten from the plaintiff without consideration, over to the bank, would excuse them (defendants) from the consequences of having wrongfully obtained it and withheld it.

3rd And because it was not true in point of fact upon the proof in the case that it was money the defendants had obtained from the plaintiff as is stated in these instructions 324, but her own check, and upon this the money was promised them.

VII. Defendants 6th instruction was rightly refused.

This instruction is tantamount to saying that if one man commits a trespass upon another and takes and carries away his money, he shall not be responsible for the wrong done by him, if at the time of doing it he shall have said he was acting for a third party and shall actually have passed the money over to such party. In other words, a wrong doer shall not be responsible in damages if he derives no benefit from the commission of the deed; such a proposition must needs be but to be stated; it requires no argument to confute it. 1 Ch. Pl. parties; defendants—91 side page and authorities there cited, 6 Amer. edition from 5th London.

VIII. Upon the 7th and 8th of defendant's instructions, I remark that by the 2nd section of 7th art. Code prac. the verification of their answers by the oath of defendant does not make any other or greater proof necessary on the part of plaintiff. Case vs. Case, 3 Howard Reports 207.

IX. As to the 10th instruction of defendants, I ask, why is not the pass-book evidence against all the world, of property and ownership in the plaintiff to the money set down therein to his credit? What other or better evidence have I that I own, as against all the world the $1000 I may chance to have on deposit with a banker? This is the only kind of evidence in almost every case that the depositor has, or can have, that he is the owner of the money he may have on deposit with the bank.

Williams & Yeatman vs. Whitlock.

X. But the defendant's instruction assumed too much, and destroyed the very defence they sought to set up. For if, as they assumed, the money was C.'s and he deposited it with E. W. C. & Brothers in plaintiff's name, only during his absence in the east, and upon the express understanding that it should be returned to him upon his return home, then the plaintiff became a "trustee of an express trust" in the sense of the 2nd section 3rd article of prac. code and by virtue of that act would bring the suit in her own name. Grennell vs. Schmidt, 3 code R. 19. In this case plaintiffs had bought and shipped in their own names a cargo of corn for Sligo, under an agreement with defendants who had chartered the vessel on which it was shipped, and took a bill of lading in the ordinary way. The corn was damaged, and plaintiffs sued and got judgment. But they were only the factors of the Messrs. Baring in the transaction, the latter being the real owner of the corn. On this state of facts the court decided that mercantile factors or agents doing business for others but in their own names, "are trustees of an express trust" within the meaning of those words in the N. Y. code of prac. That suit may be maintained by plaintiffs though not the real parties in interest to receive the amount in controversy and give a valid discharge thereof.

The plaintiff in the case at bar, undoubtedly stood in this very position. She could have given a discharge for the amount in controversy, which would have been a valid discharge against, not only Childs, but all the world. Suppose she had given such discharge to the defendants and Childs had afterwards set up a claim to the money, where would he have stood?

Additional authorities referred to under the 8th branch of remarks under point III. Bos vs. Leaman et. al. Bonds taken in the name of the people of the State, should be presented in the name of the people and not in the name of the party in interest. (Syllabus of the case.) This was an action and bond given by administrators to the people of the State. The action was brought in the name of the party in interest. One defence set up was, that the action should have been brought in the name of the people of the State. Motion was made for judgment notwithstanding the answer.

Jones, J. As to the propriety of bringing this action in the name of the party in interest, I feel considerable doubt. I incline to the belief, that notwithstanding section 111 of the code, actions of this class should still be in the name of the people of the State. Charles vs. Waterman, 2 Howard special I. R. 122. Here the real plaintiff resides out of the State and the demand belongs out of the State, and the plaintiff to the record resides within the State, the plaintiff to the record is bound to find security for costs.

Motion by defendant that plaintiff file security for costs. Plaintiff's attorney gave notice to defendant's attorney and served it with the declaration, that the demand for which this suit was brought, and all claims either in law or equity which the plaintiff had against the defendants on the 3rd of June, 1844, were on that day sold, assigned and transferred by plaintiff to A. P. Richardson and J. C. Barnage, and that this suit was brought for the benefit of Richardson and Barnage. Defendant's papers showed that R. & B. were doing business in the city of Boston as a firm, and that they resided in the State of Massachusetts. Plaintiff's counsel insisted that when the real plaintiffs resided out of the State and the demand belonged out of the State, as in this case, that the plaintiff was not bound to find security for costs.

Beardsle, J., granted the motion costs to abide the event, on the ground that R. & B. were the parties in interest, and they being non residents, were bound under former decision of this case to file security for costs.

NAPTON, J., delivered the opinion of the court.

The only question in this case is whether upon the facts hypothetically stated in defendant's instruction, that suit was maintainable.

The facts seem to have been these. Childs deposited at the banking house of E. W. Clark & Bros. $2,000, in the name of the plaintiff and

being about to go east, he handed the plaintiff the pass-book and blank checks, with permission to use them if desired, during his absence. For what purpose this was done, does not appear, nor is it material as the case now stands. A few months after, and after the return of Childs to St. Louis, he was suspected and charged with embezzling a large amount of funds from the Bank of Missouri, and the defendants, as agents of the bank, went to the house of plaintiff, in search of property and money of Childs. The plaintiff said she had $1800 of Childs' money and gave the defendants a check for that amount, which was drawn and handed over to the bank or some officer thereof. The question is, whether the plaintiff had such an interest in the draft or the proceeds, as would authorize her to bring suit for it. Our recent statute regulating proceedings and practice at law, requires a suit to be brought in the name of the party in interest.

It is difficult to arrive at the conclusion, that the plaintiff was the real party in interest, when she disclaimed all interest and when at all events, the facts supposed show that she had none whatever. The only ground of interest and upon that alone the first instruction given was based, was that the money was deposited in her name and her check would control it, so far as the banker was concerned. But this is not a question between the banker and the plaintiff, but between her and a third person to whom she has voluntarily delivered the money or the check by which the money could be obtained. I see nothing to distinguish this case from that of a servant who had the custody of goods and who delivered the same up to one who claimed them as a creditor of his master or as real owner. Can the servant maintain an action or must the master bring the suit? The case of a factor, who has an interest in his principal's goods for some purpose, is very different.

Nor do we think the plaintiff occupies the position of a trustee of an express trust. No duties were imposed upon her, so far as the case shows, except that of mere custody, and this was voluntarily relinquished. What injury then has she received?

We are unable to reconcile the instructions which the court gave. Under the first instruction we do not see well, how the jury could have found otherwise than for the plaintiff, and the second referred a question of law to the jury only calculated to mistify or mislead them. It was for the court to say whether the plaintiff was the real party in interest, upon a given state of facts.

To permit the plaintiff to sue, under the state of facts supposed, would deprive the defendants and the bank for which they acted, of a defence which would be clearly admissible if Childs sued himself. If

he really claimed this money himself, and the plaintiff had no interest, the bank could of course retain it, if it was part of the funds embezzled. but no such defence could be made against the present plaintiff.

Judgment reversed and cause remanded.